Seraballs, Abella & Cía. et al., Petitioners, *v.* Superior Court of Puerto Rico, San Juan Part, Fausto Ramos Quirós, Judge, Respondent.

No. C-66-120.     Decided May 12, 1967.

*Dubón & Dubón* and *A. Torres Braschi* for petitioners. *Edelmiro Martínez Rivera* and *Edelmiro Martínez, Jr.,* for interveners.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

This is the second attempt to obtain the execution of the judgment which we affirmed in *Widow of Seraballs* v. *Abella Hernández,* 90 P.R.R. 360 (1964). In the first, after an ample and elaborate discussion of the right of a private creditor of a general partner of a commercial partnership to attach and adjudicate to himself the latter's share in the firm's assets, we said in *Abella Hernández* v. *Superior Court,* 92 P.R.R. 269 (1965), that § 137 of the Code of Commerce, 10 L.P.R.A. § 1435, prohibited the sale at public auction of the partner's share in the partnership capital. However, we admitted that it did not mean that the private creditor could not attach and receive through the proper judicial proceedings, any profits of the partnership which, individualized according to practice and commercial usage, may be identified as belonging to the debtor partner, as well as whatever might

correspond to him from the return of the investment in the capital, or otherwise.

■ Now, it is sought to force the dissolution of the Rafael Padilla & Cía. partnership by the appointment of a receiver alleging as the cause of dissolution that the debtor-partner's legal capacity is restrained by reason of his being subject to civil interdiction. Actually, in *People* v. *Abella Hernández* (Judgment of February 16, 1966), we affirmed the judgment imposed on partner Frank Abella Hernández for murder in the second degree, and since then, he is confined in the State Penitentiary.

■ Let us consider the vicissitudes of the partnership in question. On March 4, 1959, Rafael Padilla, José A. Seraballs, Pedro Seraballs, and Frank Abella Hernández constituted, for the term of four years, a general commercial partnership under the name of Seraballs, Abella y Cía. On February 26, 1963 the firm's name was changed to Rafael Padilla & Cía., the expiration of the period of duration being extended to February 28, 1966. On July 22, 1965—before the conviction which produced Frank Abella Hernández' civil interdiction became final—the latter and Rafael Padilla, at that time the only partners in the commercial partnership, admitted Venicio R. Colón as a general partner, in the capacity of managing partner, and administrator. In addition to the agreement of an indefinite extension of the period of the partnership contract,[1] an express agreement was adopted to govern in case of death, insanity, or incapacity of any of the partners, which reads:

"*Death, Insanity or Incapacity*

. . . Fifteenth:— (a) *This partnership shall not be dissolved*

---

[1] From the text of § 143 of the Code of Commerce, 10 L.P.R.A. § 1456, it is deduced that the agreement of an indefinite duration is lawful but it compromises to the faculty of any partner to request the dissolution at any time, which the other partners can not oppose except for reasons of bad faith on the part of the person suggesting it.

*on account of the death, insanity, or other cause which may produce any disqualification of its partners.* The business and operation of the partnership shall continue under the management and administration of the other competent or qualified surviving managing partners, and *the deceased partner's heirs, or the legal representatives of the incapacitated or disqualified partner, may not intervene in any form or manner whatsoever in said management or administration.*

. . . (b) In case of death of any one of its partners his interest or share in the partnership capital shall pass to his heirs, or his heir, or to those of them to whom said share is adjudicated in the partition of the deceased partner's inheritance, said heir or heirs, as the case may be, joining the partnership in the capacity of special partner with a contribution to the partnership capital equal to the share which corresponded to his or their predecessor in title in the partnership capital, according to the determination and liquidation of said share when the last annual balance sheet prior to the date on which the death occurred was made, and with like share in the benefits or net profit of the partnership. In the event the deceased partner's heir or heirs to whom said share is adjudicated were already part of the partnership as partners thereof, the deceased partner's share in the partnership capital shall be credited to the capital account of said heir or heirs without affecting, in any form or manner whatsoever, the status of the partner which said heir or heirs had then in the partnership.

. . . (c) *In case of insanity, incapacity or any other cause which may produce the disqualification of the partner, if he were a managing partner he will cease to be such but will continue to form part of the partnership in the capacity of special partner* with the same share in the partnership capital, according to the determination and liquidation of said share when the last annual balance sheet of the partnership was made prior to the date of the insanity, incapacity, or any other cause of disqualification, and with like share in the profits or net gains of the partnership.

. . . After the disappearance of the cause which produced the partner's incapacity or if by judicial declaration, the insane or disqualified partner is rehabilitated, said partner, if he had been one of the general or managing partners of the

partnership, *will be entitled, at his choice, to be reinstated in said capacity of general partner of the company and managing and administrative partner thereof,* starting on the date of the execution of the corresponding deed with the consent and assent of any one of the other managing partners of the partnership in which his membership or reinstatement as such general partner of the company, and manager and administrator of the same, is declared.

. . . (d) The managing partner who may die, be disabled or disqualified, will not receive the salary which as such managing partner he receives for his personal services to the partnership, starting from the date of his death, insanity or other cause which may produce his disqualification." (Italics ours.)

In addition the three general partners were designated managers and directors, and it was provided that, in case of dissolution, the latter would act as liquidators with the limitations imposed by the clause copied above.

In civil case No. 61-8992 for damages, in which neither Rafael Padilla & Cía. partnership nor its general partners Rafael Padilla and Venicio R. Colón are joined as parties, plaintiff María del Carmen Saló, on her behalf and in representation of her daughter María Seraballs, requested, by verified motion of April 29, 1966 that an order be entered for the liquidation of the aforementioned partnership by a receiver designated by the court. The trial judge concluded that partner Abella Hernández' interdiction had produced the termination of the partnership contract, granted the motion, and designated Mr. Alvaro Calderón to seize, in compliance with the order and pursuant to the provisions of Rule 56.6 of the Rules of Civil Procedure, the property and effects of the partnership, and to pay, upon liquidation of the partnership, the unpaid balance of the judgment rendered in favor of plaintiffs with the share corresponding to partner Abella.

We agreed to review the proceedings. In aid of our jurisdiction we suspended the effects of the order challenged and

ordered that the business of the commercial partnership Rafael Padilla & Cía. continue under the management and administration of its active managing partners.

The restraint of the legal capacity arising from the civil interdiction[2] has acknowledged effects, of patrimonial nature, in the field of commercial business. Section 4 of the Code of Commerce, 10 L.P.R.A. § 1004, provides that "Persons possessing the following qualifications have legal capacity to engage regularly in commerce: 1. Those who have reached the age of twenty-one years. 2. *Those who freely dispose of their own property . . .*" and elaborating on the aspect of the capacity, § 7, 10 L.P.R.A. § 1007, states that "The following can not engage in commerce nor exercise any direct administrative or economic representation in commercial . . . companies: 1. *Persons sentenced to civil interdiction,* until they have served their sentence. . . ." But these provisions by themselves do not necessarily lead to the conclusion of the trial court which acknowledges effects, not merely as to the one under interdiction personally, but also as to the commercial enterprise of which he is a part.

It is indispensable to consider § 141, 10 L.P.R.A. § 1454,

---

[2] Section 24 of the Civil Code, 31 L.P.R.A. § 81, in relation to §§ 20 and 22 of the Penal Code, 33 L.P.R.A. §§ 41 and 43; *Vega* v. *Tossas,* 70 P.R.R. 368 (1949). For specific effects of interdiction in Civil Law, see No. 2 of § 96, 31 L.P.R.A. § 321, which establishes it as a cause for divorce, *Mora* v. *Oquendo,* 65 P.R.R. 533 (1946); *Torres* v. *Archilla,* 36 P.R.R. 692 (1927); §§ 191 to 193, 31 L.P.R.A. §§ 714 to 716, which provide for tutorship for those under interdiction; No. 6 of § 630, 31 L.P.R.A. § 2146, which establishes it as cause of disqualification of a person to be witness to wills; No. 4 of § 778, 31 L.P.R.A. § 2456, which establishes it as a cause for disinheriting the children and legitimate descendants; No. 3 of § 1591, 31 L.P.R.A. § 4391 which establishes it as a cause for the dissolution of a civil partnership; § 1623, 31 L.P.R.A. § 4481, which establishes it for the termination of the agency.

See, as to the other effects, § 3(d) of Act No. 59 of June 19, 1965, 4 L.P.R.A. § 643 (1966 Supp.), and Act No. 70 of June 20, 1963, 3 L.P.R.A. §§ 556a to 556e, in relation to § 12 of Art. II of the Constitution of the Commonwealth of Puerto Rico.

which is, in our opinion, the source of the rule of law applicable. It reads:

"Partnerships constituted in accordance with this Code shall be wholly dissolved for the following reasons:

1. Expiration of the term stipulated in the partnership contract;

2. Entire loss of capital;

3. Failure of the partnership;

4. Death of one of the general partners, unless the partnership contract contains an express agreement providing that the heirs of the deceased partners shall continue in the partnership or that the partnership shall be continued by the surviving partners;

5. Insanity or other cause producing the incapacity of a managing partner to manage his property;

6. Bankruptcy of any of the general partners."[3]

---

[3] The causes for dissolution referred to in Nos. 4 to 6, both inclusive, were added by Act No. 42 of April 25, 1930 (Sess. Laws, p. 320).

It corresponds to § 222 of the Spanish Commercial Code in force. Section 139 of the Spanish Mercantile Regulations of December 14, 1956 is interesting, I Medina and Marañón, *Leyes Civiles de España* 335 (1958 ed.), which implements, for registration purposes, what relates to the registration of the dissolution of general and limited partnerships. It says:

"139. For the registration of the dissolution of the general and limited partnerships it is necessary that the consent of all the general partners be established, unless the dissolution takes place as a result of the termination of the period prefixed in the contract, of the declaration of bankruptcy of the partnership or of any of the general partners, or the death of any of the latter, in the absence of an express agreement to continue the partnership with the heirs of the deceased or to subsist among the survivors. In relation to the consent of the special partners, they will abide by the provisions of the partnership bylaws.

"In the first case, it will suffice that any of the general partners request it from the Registrar by petition with verified signature.

"In the second case, judicial testimony of the declaration of bankruptcy must be presented.

"In case of death of a general partner it will suffice that any of the other general partners request it from the Registrar by petition with verified signature, to which the death certificate of the Civil Registry will be attached.

"*In all other cases a public deed must be presented.*" (Italics ours.)

The doctrinal interpretation as to the latter provision marks a clear distinction as to said special causes of dissolution deriving from personal circumstances of the partners and that which bears on the partnership agreement itself and the partnership entity. It agrees that the latter—the expiration of the prefixed period—operates as of course because it refers to the very existence of the partnership entity itself. See, *Rodríguez* v. *Registrar*, 22 P.R.R. 730 (1915); *Mendía* v. *Arzuaga et al.*, 37 P.R.R. 344 (1927). Not so as to those related to the personality of any of its partners, either by extinction, as in case of death, or by restraint of the juridical status, as in case of insanity, incapacity or bankruptcy. The latter are called facultative causes of dissolution, since they can only be invoked by any of the other partners considering the purpose of cohesion announced in the constitution of every partnership.

The gloss of Rodrigo Uría in his work *Derecho Mercantil* 132–134 (2d ed. 1960), summarizes the prevailing opinion, as follows:

*"Causes of dissolution.*—They are of two kinds: contractual and legal. The former shall be established in the original contract or in further modification thereof, the partners enjoying full liberty to determine them. The latter are derived from §§ 221, 222, and 224, and come into play in default of contractual causes excluding them.

The legal causes for dissolution are the following:

1st. Expiration of the term of duration stipulated in the partnership contract (§ 221, No. 1). This cause operates as of course, the dissolution producing effects without the need of any declaration whatsoever of the partners and inclusive in prejudice of third parties prior to its registration in the Mercantile Registry (§ 226). The law excludes the implied extension of the partnership after the period for which it is constituted has elapsed. For efficacy the extension shall be executed 'in a public instrument which shall be presented for record in the mercantile registry before the period for which it is constituted has elapsed.' (Section 141 of the Mercantile Registry Regula-

tions and Decisions of the General Directorate of Registries of June 6, 1952 and January 18, 1958.) After the period for which it is constituted has elapsed, if the members desire to continue in partnership they shall have to execute a new contract (§ 223). In view of the strictness of this cause of dissolution the partners use to circumvent it by stipulating in the contract an indefinite period of duration of the partnership.

2d. .    .    .    .    .    .    .    .

3d. Complete loss of capital (§ 221, No. 2). This has its explanation in the considerable difficulties which would be encountered by a .partnership lacking capital for the development of its enterprise.

4th. Bankruptcy of the partnership (§ 221, No. 3). The effects that the bankruptcy bring to the bankrupt (disqualification for the management, dispossession of his property, and transfer of the management to the receiver), aside from the fact that the bankruptcy is in essence a proceeding of liquidation, make it indispensable that bankruptcy operate as a cause of dissolution.

5th. The death of any partner (§ 222, No. 1). This cause is explained by reason of the essentially .personalized nature of the partnership. The death of any partner will necessarily affect the contractual bond, contracted in consideration of the personal conditions of the partners. But, as in partnerships which aspire a prolonged existence the death of partners unavoidably occur, the Code has provided the possibility of excluding this cause of dissolution *by expressly stipulating in the deed that the heirs of the deceased partner shall continue in the partnership, or that the partnership shall be continued by the surviving partners.* In practice both agreements are very common and in the event that the deed should provide for the continuation of the partnership with the heirs of the deceased partner the Supreme Court has declared that by the mere and simple acceptance of the inheritance the heirs accept the rights, obligations and responsibilities of their predecessor in title derived from the partnership contract and enter by law to form part of the partnership (Judgment of March 31, 1959).

6th. The incapacity of a managing partner to manage his property (§ 222, No. 2). The reason for this cause is the same

one as the preceding, since the incapacity is equivalent to the civil death, and the incapacitated partner can not continue to discharge his management position.

7th. Bankruptcy of any partner (§ 222, No. 3). This cause is also along the line of the other two. The bankruptcy not only incapacitates the partner to manage his property but also, in declaring his property in force liquidation, the credit of the partnership (which, in short, is the credit of its partners) is seriously affected, and the guarantees of the partnership creditors are diminished.

8th. The unilateral notice of termination of the contract (§§ 224 and 225). This is a cause which comes into play only in the event—actually very frequent—that the partnership has been constituted for an indefinite period. In such a case § 224 provides that 'if any of the partners requests its dissolution, the other partners can not oppose it except for reasons of bad faith on the part of the person suggesting it.' Bad faith is understood as the intention of deriving a personal profit which would not be received should the partnership continue. After exercising the right to notice of termination of the contract the partner requesting the dissolution cannot prevent the postponement of the division of the partnership property and goods until the pending partnership transactions are concluded (§ 225).

*Of all these legal causes of dissolution, aside from the first, which acts ipso iure, as we have seen, the others are sort of conditions or legal propositions necessary to produce the dissolution, but the latter will only take effect if the cause is ultimately asserted by all or some of the partners."* (Italics ours.)

Gay de Montellá,[4] Benito,[5] Garrigues,[6] and Vivante[7] take the same view. Professor Rubio of the *Universidad Central*

---

[4] I *Tratado Práctico de Sociedades Mercantiles* 365, referring to the special causes of dissolution, says: "It includes the death of a general partner, insanity or other cause of incapacity of a managing partner and the bankruptcy of a general partner, which three causes do not operate by law the dissolution of the partnership, but which are merely optional. . . ."

[5] III *Manual de Derecho Mercantil* 380–381.

[6] 3-1 *Tratado de Derecho Mercantil* 1209–1213.

[7] II *Tratado de Derecho Mercantil* 496–497.

*de Madrid*, referring to the causes of dissolution, affirms that they are not causes for termination "but juridical propositions to produce the latter at the proper time."[8]

Specifically referring to the dissolution by insanity or any other cause of incapacity of a managing partner to manage his property, Gay de Montellá says in his I *Tratado Práctico de Sociedades Mercantiles* 365 that:

"It should always be understood that this clause is only effective, when the deed or the statute have not provided the case or the manner to settle the conflict created by such incapacity."

By analogy the decision of the Supreme Court of Spain in Judgment of September 21, 1907 (108 *Jur. Civ.* 338) is applicable in considering the effect of the death of a partner, it stated that the causes of dissolution established in § 222 of the Code of Commerce are not so absolute as "to imply ipso facto, by operation of law, the termination of the partnership, and even less, that it be an obstacle for those interested in it to continue, by mutual consent, the operations in which they were engaged." (Page 341.)

■ The principles stated having been applied to the case at bar, the foresight of the partners of Rafael Padilla & Cía. in providing in the partnership contract for the contingency of the incapacity of a managing partner is evident. Irrespective of the motives which might have inspired its adoption, the rule established is not in contravention of the law. The court cannot substitute the will of the parties. The personal creditors of the incapacitated partner cannot have more rights than those stated in *Abella Hernández* v. *Superior Court, supra.*[9]

---

[8] *El principio de la conservación de la empresa y la disolución de las sociedades mercantiles en el Derecho español,* 22 *Revista de Derecho Privado* 288–306, especially at pages 291, 292 and 295.

[9] On October 28, 1965 plaintiff in the main action requested and obtained by way of security an order addressed to the partnership Rafael Padilla & Cía. and its managing partners to abstain from paying to defendant Abella any amount corresponding to him as liquidated or to

■■ But even if the position of the respondent court were tenable and the dissolution, because of the mere interdiction of one of the managing partners, were proper, the receivership would not be the adequate legal remedy. Section 147 of the Code of Commerce, 10 L.P.R.A. § 1460, expressly opposes it. This section invests on the managing partners the capacity of liquidators and § 153, 10 L.P.R.A. § 1466, specifically provides that in the liquidation in which a minor or incapacitated person is interested the father, mother or guardian of the latter shall act with full powers, as though a private transaction were involved. Otherwise, precisely what is sought to be prevented would be achieved, the interference of a stranger in interests extraneous to those which inspired the organization of the partnership.[10]

The order entered by the Superior Court, San Juan Part, will be annulled.

be liquidated profits or any amount for refund of capital contributed, requiring also that said amounts be deposited in the Office of the Secretary of the Court for the purpose of the execution of the judgment rendered (Tr. Ev. 191–195). The order to secure payment contains other particulars which need not be recited.

[10] In general, for the justification of a receivership, see *Freeman* v. *Superior Court,* 92 P.R.R. 1 (1965) and cases cited therein.